YELVERTON, Judge.
This appeal is before us on remand from the Louisiana Supreme Court. On defendant’s original appeal of his November 1990 convictions for distribution of marijuana, conspiracy to distribute Schedule I CDS, and possession with intent to distribute cocaine, this court reversed his convictions believing that the trial judge erred in not granting the defendant’s motion for a mistrial. State v. Silguero, 594 So.2d 1070 (La.App. 3d Cir.1992). The supreme court reversed the judgment of this court and remanded the case for consideration of defendant’s remaining three assignments of error. State v. Silguero, 608 So.2d 627 (La.1992).
ERRORS PATENT:
La.C.Cr.P. art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post-conviction relief. The record shows that the court did not so inform the defendant. This defect has no bearing on whether the sentence is excessive and thus is not grounds to reverse the sentence or remand the case for resentenc-ing. La.C.Cr.P. art. 921. The three year prescriptive period does not begin to run until the judgment is final under La.C.Cr.P. art. 914 or 922, so prescription is not yet running. The purpose of the notice requirement of Article 930.8(C) is to inform a defendant of the prescriptive period in advance. Accordingly, we direct the district court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion, and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Cox, 604 So.2d 189 (La.App. 2d Cir.1992); State v. Stephens, 604 So.'2d 203 (La.App. 2d Cir.1992).
We will now set forth, in greater detail than in our first opinion, the facts of this case, then we will decide each of the remaining three assignments of error.
FACTS:
On March 15, 1989, Sally Estis and Gary Soileau were arrested for possessing marijuana, cocaine, and drug paraphernalia after a search of a home in Eunice, Louisiana, pursuant to a search warrant, revealed the above contraband. The following day, officers returned to the home, having learned from Ms. Estis that there was more marijuana contained in a suitcase which had been placed at the home of a neighbor. The suitcase was recovered and contained 38 pounds of marijuana. Ms. Estis and Mr. Soileau revealed that the marijuana in the suitcase had been brought to their home a week earlier by William Hendricks and the defendant. Ms. Estis had refused to allow the marijuana into her home, therefore the suitcase was brought *1348 next door to the neighbor’s house for safekeeping.
Before the defendant’s arrival in Eunice, there had been discussions between him and Ms. Estis concerning the possibility of opening a pet shop in Eunice. After arriving in Eunice, the defendant and Ms. Estis continued their discussions concerning the pet shop operation and they made arrangements for a location and for utility and phone connections. During his stay in Eunice, the defendant purchased a 1977 Continental Mark IV automobile for $1,300. In this newly purchased automobile, the defendant, Bill Hendricks, Gary Soileau and a fellow named “Polar Bear” drove to Houston, Texas. Gary Soileau and “Polar Bear” drove back to Eunice in a pickup truck belonging to the defendant’s brother.
Some days later, on March 18, 1989, the defendant, accompanied by Ms. Kelly Jo White and her daughter, Amber, returned to Eunice in the Continental Mark IV. Following the defendant in another car was William Hendricks and Beverly Griffin. The defendant was returning to Eunice to deliver one of the vehicles to Gary Soileau, who was purchasing the car because his car had been wrecked earlier, and also for the purpose of making further arrangements for the pet shop operation.
Acting on an anonymous telephone call, patrol officers of the Eunice Police Department stopped the defendant’s vehicle and arrested Kelly Jo White, who was the driver, for having no driver’s license in her possession and for violation of the child restraint laws. Ms. White was taken to the Eunice Police Station where she informed them she was not the owner of the vehicle, but she did give them permission to search the vehicle. Defendant was also arrested and brought to the police station. He was uncooperative, pretending not to understand English. During the warrantless search of the vehicle, about four ounces of cocaine was discovered hidden in the trunk. Also found during this search were airline ticket stubs and luggage receipt stubs, one of which matched the luggage tag on the suitcase which had been previously seized by police when they searched the home of Gary Soileau and Sally Estis.
Later, after the arrest of the defendant and Ms. White, the police, acting on an additional anonymous tip, stopped the vehicle driven by William Hendricks. A small amount of drugs was found in that vehicle which resulted in the arrest of Beverly Griffin and William Hendricks.
Mr. Hendricks enticed the police into believing that he could give significant information to them concerning Gulf Coast drug operations. Mr. Hendricks went to the Drug Enforcement Administration in Houston. After meeting with DEA agents and failing a number of polygraph tests, the DEA let him go. He is still gone. Acting on information from Mr. Hendricks, police from Brownsville, Texas, entered a storage locker that was rented by the defendant, and discovered a large quantity of marijuana.

Assignment of Error No. 1:

Defendant contends that the trial court erred in it’s ruling on the motion to suppress, allowing the introduction of evidence which was unconstitutionally seized. Defendant contends the trial court should not have allowed the introduction of evidence seized from the warrantless search of the defendant’s car because the owner, the defendant, did not give permission to search the car. Defendant alleges that there was no probable cause to stop the vehicle, and that the consent to search executed by Ms. White was invalid, because she had informed the police that the vehicle was not hers, and defendant claims he told Ms. White not to give permission to search the vehicle.
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1 as well as by both state and federal jurisprudence. An officer may stop a person with less than probable cause for arrest if he has specific and articulable facts to suspect possible criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This authority acknowledges the need of law enforcement officers to investigate possible *1349 crimes and, since a temporary detention is less of a seizure than arrest, a less stringent standard should apply.
Whenever a police officer accosts an individual and restrains his freedom to walk away, he has “seized” that person, and the Fourth Amendment requires that the seizure be “reasonable.” State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476, citing United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Because the limited nature of seizures is less intrusive than traditional arrests, stops of this sort may be justified on facts that do not amount to the probable cause required for an arrest. State v. Flowers, supra. The Fourth Amendment requires that the detaining officer have knowledge of specific, articula-ble facts which, taken together with rational inferences from those facts, reasonably warrant the stop. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); State v. Brown, 370 So.2d 547 (La.1979). Reasonable cause for an investigatory stop is something less than probable cause, but it does require the detaining officer to have articulable knowledge of particular facts sufficiently reasonable to suspect the detained person of criminal activity. State v. Hathaway, 411 So.2d 1074 (La.1982). The totality of the circumstances, “the whole picture,” must be considered in determining whether reasonable cause exists. United States v. Cortez, supra.
In the instant case, the car in which the defendant was riding was stopped on the basis of an order given by Officer Kent Moody, who is the Chief of Detectives for the Eunice Police Department. Officer Moody gave the order to stop the vehicle after he received an anonymous telephone call on March 18, 1989. The anonymous informant told Officer Moody that a silver and gray Continental with Texas license plates and a male Mexican occupant had just pulled up at 340 Clark Street and that it might contain narcotics. After informing Chief Fuselier that this was a description of a vehicle that had a connection to an investigation a few days earlier, the decision to stop the vehicle was communicated to the dispatcher who then notified all officers on patrol. The vehicle in which defendant was riding was then stopped by Officer Cole after he noticed it traveling down Laurel Street. Officer Cole testified that he stopped the car for two reasons; one, the order given over the radio, and the other, there was an unrestrained child riding in the front seat. However, Officer Cole testified he would have stopped the car anyway because of the order over the radio even if the child had been restrained. After he stopped the car, Officer Cole arrested the driver, Kelly Jo White, because she did not have a driver’s license. Other officers arrived at the scene to assist Officer Cole while he transported Ms. White to the police station.
In State v. Robinson, 342 So.2d 183 (La.1977), the court recognized that an informant’s tip can provide a police officer with reasonable cause to detain and question a suspect. In State v. Sandifer, 544 So.2d 1305 (La.App. 4th Cir.1989), the court held that an anonymous informant can provide a basis for an officer to detain and interrogate someone suspected of a crime as long as the information received from the anonymous tipster contains indicia of reliability, such as specificity of information and corroboration by independent police work.
In the instant case, Officer Moody was part of a search team that found 38 pounds of marijuana at the residence of Sally Estis and Joseph Soileau at 340 Clark Street on March 14 and March 15, 1989. During this investigation, Ms. Estis informed Officer Moody that the defendant, a Mexican male, was the supplier of the drugs and there was supposed to be another large delivery in the next few days. Also, Officer Moody had received information from Acadia Parish Detective Danny Wimberly that a Mexican male was driving a pickup truck that contained narcotics and it was located at a particular hotel. Officers went to the hotel, but the person in the pickup truck had already left. However, the truck was discovered the next day at the Soileau residence when the search warrant was execut *1350 ed. It was determined that the truck was registered to defendant’s brother, Joe Sil-guero. This truck was driven to the residence by Gary Soileau after it had been given to him to use by the defendant.
Officer Moody had reasonable suspicion to order the stop of the car in which the defendant was riding. Moody had knowledge that a large amount of drugs had been found at the residence where the car was located only two days earlier. He also knew from the information provided by Ms, Estis, that a possible drug shipment was expected in the next few days and the supplier was a Mexican male. It was at that point in time that Moody received an anonymous call explaining that a Continental Mark IV carrying a Mexican male was located at 340 Clark Street and it possibly contained narcotics. Based on the totality of the circumstances, Moody had sufficient articulable facts to order the stop of the vehicle. Moody made a rational inference that the Mexican male in the car might be the supplier of the drugs. The information given to him by Ms. Estis was corroborated by the tip from the anonymous phone caller. Therefore, it was reasonable for Moody to believe that the person in the car may have been involved in criminal activity.
The defendant also claims that he did not give permission to search the car once it was stopped. Defendant claims he told Ms. White not to give permission to search the car. Since Ms. White gave permission to search the car even though she was not the owner, defendant claims the warrantless search was invalid, especially because the police knew Ms. White was not the owner of the car.
A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Tatum, 466 So.2d 29 (La.1985). A consent search is a recognized exception to the warrant requirement. Schneckloth v. Bustamonte, supra; State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Musacchia, 536 So.2d 608 (La.App. 1st Cir.1988). Consent is valid when it is freely given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); State v. Bodley, 394 So.2d 584 (La.1981); State v. Musacchia, supra. When the State seeks to rely upon consent to justify a warrantless search, it has the burden of proving that the consent was freely and voluntarily given. Whether consent was given voluntarily is an issue of fact to be determined by the fact finder in light of the totality of the circumstances. The trier of fact may consider the credibility of the witnesses, as well as the surrounding circumstances, in determining the issue of voluntariness. On appeal, the fact finder’s determination is entitled to great weight. State v. Edwards, 434 So.2d 395 (La.1983).
In the instant case, it was Officer Cole who stopped the vehicle. Lt. Guantt and Officer Vige then arrived on the scene and Lt. Guantt took over at that point. It was determined that Ms. White, the driver, did not have a driver’s license, so Lt. Guantt ordered Officer Cole to arrest her and take the driver and her child to the police station. At the station, Officer Cole asked Ms. White whose vehicle it was, but Ms. White would not answer. However, Ms. White did sign a consent to search form so that the vehicle could be searched. Officer Cole had earlier asked the defendant whose vehicle it was and the defendant responded that it was not his vehicle. Officer Cole testified that at the point he executed the consent to search form, he did not know who was the owner of the car. Officer Vige testified that the defendant never stated that the vehicle was his or that defendant did not want anyone to search the vehicle. In fact, the defendant was avoiding answering questions because he said he did not understand English. Officer Valenta testified that while at the station, he never heard the defendant give an order to Ms. White to not communicate with the other officer. Officer Valenta *1351 also stated that once the defendant started talking, he stated the vehicle belonged to Ms. White. Lt. Guantt also testified that the defendant never claimed the vehicle was his or that he did not want it searched while the defendant was pretending not to speak English. All of the officers testified that Ms. White was not threatened or coerced to sign the consent to search form.
In State v. Rawls, 552 So.2d 764 (La.App. 1st Cir.1989), the court held that consent to search is valid when freely given by a person who possesses common authority or another sufficient relationship to the premises or effects sought to be inspected. Absent evidence as to the ownership of an automobile, the vehicle’s operator had authority to consent to a search of the vehicle. State v. White, 512 So.2d 590 (La.App. 3d Cir.1987).
In the instant case, Lt. Guantt specifically testified that since neither occupant claimed ownership of the vehicle, the police got permission to search from the driver, Ms. White. Officer Cole testified that he did not know who was the owner of the vehicle when he had Ms. White execute the consent to search form. Officer Cole also testified that he was not able to determine who was the owner of the vehicle from the registration papers that were presented to him at the time of the stop. He stated that he was never shown a bill of sale which would indicate that defendant was the owner of the vehicle. Since the police did not know who was the owner of the vehicle, they properly received permission to search from the driver of the vehicle. This assignment of error has no merit.

Assignment of Error No. 2:

Defendant contends the trial court erred in its ruling on the admissibility of the hearsay statements of the alleged co-conspirators. It should be noted that the defendant does not single out any specific hearsay statements which prejudiced him. Defendant makes only a general allegation that in order to admit the hearsay statements of his co-conspirators, a prima facie case as to the conspiracy must first be established.
Louisiana Code of Evidence art. 801 D(3)(b) provides:
D. Statements which are not hearsay.
A statement is not hearsay if:
* * * * * *
(3) Relational and privity admissions. The statement is offered against a party, and the statement is:
* * * * * *
(b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy has been established;
Therefore, before a trial court can admit a hearsay statement made by a conspirator, the State must first make a prima facie showing of the conspiracy.
A review of the trial transcript shows that defendant objected to the testimony of Sally Estis concerning statements made by Bill Hendricks. La.C.E. art. 801 D(3)(b) is not applicable in this situation because the statement in question was not made by the defendant and this statement was not made in furtherance of a conspiracy to commit a crime. The hearsay statement which was admitted concerned the employment relationship of Bill Hendricks and the defendant. Also, even if La. C.E. art. 801 D(3)(b) is found applicable, at this point in the trial, the State had already established a prima facie case of conspiracy against the defendant. Prior to this witness, the State had produced the testimony of several police officers that defendant was wanted in connection with the raid on the Soileau residence where a large amount of marijuana had been discovered and the defendant had been identified as the supplier of the drugs.
A further review of the trial transcript reveals that defendant made no further hearsay objections to any of the testimony of Beverly Griffin, Kelly Jo White or Gary Soileau, his alleged co-conspirators. Under La.C.Cr.P. art. 841, an irregularity or error cannot be availed of after the verdict unless it was objected to at the time of the occurrence. Therefore, this assignment of error has no merit.

*1352
Assignment of Error No. 4-

Defendant contends the trial court erred in imposing a sentence that is unconstitutionally excessive. Defendant was a first felony offender having only one misdemeanor conviction on his record which was 12 years prior to his arrest on the instant charges. Defendant contends he has led a relatively crime free life and he has maintained steady employment and personal stability. Considering his past record, defendant contends the trial court erred in imposing unsuspended sentences at hard labor.
Defendant was sentenced to 15 years at hard labor and a $5,000 fine on the distribution of marijuana charge. Defendant’s potential sentence on this charge was imprisonment at hard labor for not less than five nor more than 30 years and in addition, a fine of not more than $15,000. On the conspiracy to distribute marijuana conviction, defendant was sentenced to seven- and-one-half years at hard labor and fined $2,500. Defendant’s potential sentence on this conviction was imprisonment at hard labor for not less than five nor more than 30 years, and a fine of not more than $15,000. Defendant contends that the trial court erred in imposing sentences which equaled one-half of the maximum sentence allowed by law.
Article 1 § 20 of the Louisiana Constitution of 1974, prohibits “cruel, excessive, or unusual punishment.” A sentence which falls within the statutory limits may nevertheless be excessive under the circumstances. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Naquin, 527 So.2d 601 (La.App. 3d Cir.1988). To constitute an excessive sentence this court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than needless imposition of pain and suffering. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Everett, 530 So.2d 615 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1233 (La.1989). The trial judge is given wide discretion in imposing a sentence, and a sentence imposed withm statutory limits will not be deemed excessive in the absence of manifest abuse of discretion. State v. Howard, 414 So.2d 1210, 1217 (La.1982).
When sentencing the defendant, the trial court noted that the defendant was caught with a large quantity of marijuana and some cocaine. The trial court stated that the evidence at trial indicated that he was in the process of setting up a drug distribution center in the city of Eunice. The trial court also felt there was a strong probability that defendant would commit another crime and that defendant needed a custodial environment in order to rehabilitate himself. Also, the defendant’s sentences were to run concurrently which is a benefit to him. Considering the above factors, the sentences imposed on the defendant were not unconstitutionally excessive and do not shock our sense of justice. The trial judge did not abuse his discretion.
Therefore, this assignment of error has no merit.

Conclusion:

The trial court was correct in denying the defendant’s motion to suppress because there was reasonable suspicion to stop the car and valid consent to search the car was obtained from the driver of the vehicle. The trial court did not err in its ruling on the admissibility of the hearsay statements of the alleged co-conspirators. The sentences imposed on defendant by the trial court were fair and just based on the circumstances of this case.
The defendant’s convictions and sentences are affirmed.
AFFIRMED.