712 So.2d 941 (1998)
STATE of Louisiana
v.
Erran G. EVANS.
No. 97-KA-1030.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1998.
*942 Paul D. Connick, Jr., District Attorney, Terry Boudreaux, Thomas J. Butler, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Laurie A. White, Louisiana Appellate Project, New Orleans, for Defendant/Appellant.
Before DUFRESNE, WICKER and GOTHARD, JJ.
GOTHARD, Judge.
The defendant, Erran G. Evans was charged by grand jury indictment with the first degree murder of Reverend John Thomas, a violation of LSA-R.S. 14:30. After the state amended the charge to second degree murder, a violation of LSA-R.S. 14:30.1, the defendant entered a plea of not guilty. Following a four-day trial, the jury returned a verdict of guilty as charged, and the trial court subsequently sentenced him to the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals his conviction urging three assignments of error.

FACTS
In the early morning of December 1, 1998, Fenesha Blunt was walking on the side of Airline Highway, in Metairie, Louisiana, when the victim, Reverend Thomas, drove up beside her in his Cadillac. Upon observing the Cadillac, the defendant, who was walking on the opposite side of the highway, approached the driver's side of the Cadillac and negotiated with Reverend Thomas regarding sexual services which Blunt could perform for him. Following these negotiations, the defendant and Blunt entered the Cadillac, and they drove to a nearby Exxon gas station.
The defendant exited the Cadillac at the Exxon station to buy a beverage, and after purchasing a beer, the defendant returned to the vehicle and instructed Ms. Blunt to move to the front seat. He also advised Ms. Blunt that Reverend Thomas wanted to "turn a date" with her. After Blunt moved to the front seat with Reverend Thomas, the two of them drove off leaving the defendant at the Exxon station.
Thereafter, Reverend Thomas parked his Cadillac in the 3100 block of Lauset Street, which was approximately two blocks away from the Exxon station. After he paid Blunt $20.00, they moved to the back seat. Blunt then engaged in sexual intercourse with Reverend Thomas and she also performed fellatio upon him. When Reverend Thomas exited the vehicle, Blunt heard a gunshot, and she observed the defendant walking out "from behind the car door" holding a .380 caliber pistol. Upon exiting the vehicle, she saw Reverend Thomas laying on the ground. The defendant and Blunt then departed the scene in the Cadillac leaving the body of Reverend Thomas laying on the side of the road. They eventually proceeded to their residence and parked the Cadillac five or six blocks away from it.
Reverend Thomas' body was discovered later that morning, and an examination of the *943 body disclosed a fatal gunshot wound to his back.
Later that evening the defendant and Blunt returned to the Cadillac and discovered that the battery had been stolen. As the defendant was attempting to install another battery in the vehicle, Deputy Robert Murphy, who was responding to a report of abandoned vehicle, arrived on the scene. As Deputy Murphy began questioning the defendant and Blunt, he received a radio broadcast reporting that the Cadillac may have been involved in a homicide earlier that day. When Deputy Murphy confirmed that the license plate number matched that of the victim's vehicle, he ordered the defendant and Blunt to place their hands on the vehicle, and he requested the assistance of other officers. Shortly thereafter, Detective Jarrod Gervais arrived on the scene, and his pat-down search of Blunt revealed a .380 caliber pistol. Subsequently, a 9 millimeter pistol was found underneath a refrigerator approximately 10 feet in front of the Cadillac.
The defendant and Blunt were arrested and transported to the Detective Bureau. Blunt then gave two recorded statements implicating the defendant as the perpetrator of the murder. The defendant also gave a recorded statement; however, he implicated Blunt as the perpetrator.
After giving her statements, Blunt asked if she could speak the defendant, and the defendant and Blunt were allowed to speak alone in the interview room. Detective James Wright and Detective Philip overheard their conversation in which the defendant told Blunt to "take the charge." Thereafter, Blunt approached Detective Wright and told him that she murdered Reverend Thomas; however, within minutes she recanted that admission.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment, the defendant contends that the trial court erred by admitting evidence of other crimes in that the state failed to meet the prerequisites to admissibility of such evidence.
In accordance with LSA-C.Cr.P. art. 720 and State v. Prieur, 277 So.2d 126 (La.1973), the state filed a pre-trial notice of its intent to use evidence of other crimes. In particular, the State noticed its intent to introduce evidence relating to the following crimes:
On 09/25/94 at 9301 Airline Hwy. Room 411, New Orleans., violation of R.S. 14:60., 14:27:30 Att. 1st Degree Murder of Larry Cartwright and 14:67 Theft of a Vehicle, $7,500.
On November 27, 1994 at 2730 Philip St., New Orleans, La. 14:30 1st Degree Murder of Ngu Nguyen.
Following a Prieur hearing, the trial court ruled that the evidence would be admissible.
At trial, the state introduce evidence showing that the on September 25, 1994, the defendant entered Cartwright's room at the London Lodge Motel located at 9301 Airline Highway in New Orleans and shot him in the neck. The defendant then robbed Cartwright of $2,500.00, a 9 millimeter gun and his car keys, and he departed the scene in Cartwright's car.
The state also introduced evidence showing that on November 27, 1994, the defendant and Blunt entered Ngu Nguyen's store located at 2730 Phillips Street in New Orleans. The defendant shoved Nguyen into some video games, pointed a .380 caliber pistol at him and removed a 9 millimeter gun from Nguyen's waistband. Employing the .380 caliber pistol, the same gun used to kill Reverend Thomas, the defendant then shot Nguyen in the chest fatally wounding him. In the meantime, Blunt robbed four customers of their jewelry. Before leaving the scene in a black pick-up truck, the defendant and Blunt emptied the register taking over $9,000.00.
Generally, evidence of other crimes, or bad acts, is not admissible. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Silguero, 608 So.2d 627 (La.1992), on remand, 616 So.2d 1346 (La.App. 3 Cir.1993). These exceptions *944 are codified in LSA-C.E. art. 404(B)(1) which provides in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state argues that the evidence of other crimes is admissible under the system/modus operandi exceptions.
In State v. Code, 627 So.2d 1373, 1381 (La. 1993), cert. denied, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 491, rehearing denied, 512 U.S. 1248, 114 S.Ct. 2775, 129 L.Ed.2d 887 (1994), the Louisiana Supreme Court set forth the following factors which must be met for other crimes evidence to be admissible under the system or modus operandi exception:
(1) there must be clear and convincing evidence of the commission of the other crimes and the defendant's connection therewith; (2) the modus operandi employed by the defendant in both the charged and the uncharged offenses must be so peculiarly distinctive that one must logically say they are the work of the same person; (3) the other crimes evidence must be substantially relevant for some other purpose than to show a probability that the defendant committed the crime on trial because he is man of criminal character; (4) the other crimes evidence must tend to prove a material fact genuinely at issue; and (5) the probative value of the extraneous crimes evidence must outweigh its prejudicial effect.
We find that the prior offenses are not so similar as to produce a distinctive modus operandi, and therefore the trial court erred in admitting the evidence of other crimes. However, even though the evidence should not have been admitted at trial, its admission may be considered harmless.
The erroneous admission of other crimes evidence is a trial error subject to harmless error analysis on appeal. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332; State v. Pittman, 95-382 (La. App. 5 Cir. 10/1/96), 683 So.2d 748. The analysis for determining harmless error is whether the verdict actually rendered in this case was surely unattributable to the error. State v. Johnson, supra.
Considering Blunt's trial testimony which implicated the defendant as the perpetrator of the murder, it is clear that there was sufficient evidence to convict the defendant of the second degree murder of Reverend Thomas without the evidence of other crimes. As such, we find that the jury's verdict was unattributable to the evidence of prior offense and therefore was harmless error. Accordingly, this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment, the defendant contends that the trial court erred in refusing to suppress his statements that he made to the police during custodial interrogation. The defendant argues that the police continued to question him despite his invocation of his right to counsel and his refusal to sign a waiver of rights form.
The statements of an accused, whether exculpatory or inculpatory, when made during custodial interrogation should be suppressed unless the accused is first advised of his right to remain silent and his right to counsel. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Harper, 430 So.2d 627 (La. 1983). When an accused asserts his right to counsel the police must scrupulously honor the invocation of the right and interrogation must cease. State v. Harper, supra.
At the suppression hearing, the state offered the testimony of Detective Wright and Detective Ramon. Detective Wright testified *945 that prior to the taking of the recorded statement he read the defendant his Miranda rights, and that the defendant signed the rights of arrestee form indicating that he had been read the rights. Although the defendant refused to sign the waiver of rights section of the rights of arrestee form, Detective Wright testified that at no time did the defendant invoke his right to counsel nor did he threaten or coerce the defendant in any manner.
Detective Ramon testified while taking the recorded statement, the defendant acknowledged that he had been advised of his rights, and he admitted that he was voluntarily giving the statement. He further testified that at no time during the statement did the defendant make a request for the assistance of counsel.
Contrarily, the defendant testified that he asked for an attorney, but the request was denied. He also testified that he was never read his rights and the defendant denied making the recorded statement.
The trial court faced with contradictory testimony during the suppression hearing made a credibility choice, and in denying the motion to suppress, the trial court obviously accepted the testimony of the detectives. In reviewing the trial court's ruling as to the admissibility of a confession, his conclusions on the credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. The trial court's ruling will not be overturned on appeal unless it is unsupported by the evidence. State v. Robinson, 628 So.2d 1342 (La.App. 5 Cir.1993). After reviewing the testimony, we find that the evidence supports the trial court's ruling.
Next, the defendant contends that his statements to Blunt should have been suppressed because she was a government informant and thus the conversation amounted to a custodial interrogation. However, the defendant failed to show either that Blunt was an informant or that the police created a situation likely to induce the defendant to make the statement.
Accordingly, we find that the trial court did not err in denying the motion to suppress and therefore this assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER THREE
By this assignment, the defendant contends that the evidence presented was insufficient to support his conviction of second degree murder.
The constitutional standard for testing the sufficiency of evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based in proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Forrest, 95-31 (La.App. 5 Cir.2/14/96), 670 So.2d 1263, writ denied, 96-0654 (La.6/28/96), 675 So.2d 1117.
The evidence presented in this case was circumstantial. The statutory rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. This statutory rule for circumstantial evidence does not provide a separate test from the Jackson standard to be applied in determining the sufficiency of evidence to sustain a conviction. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational trier of fact beyond a reasonable doubt that defendant is guilty. State v. Forrest, supra.
The pertinent portion of the second degree murder statute, LSA-R.S. 14:30.1(A)(1), provides that second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.
At trial, the state presented the testimony of Blunt. After admitting that she had pled guilty to armed robbery of Reverend Thomas and had received a 30-year sentence in exchange for her testimony, she testified regarding the facts surrounding the murder. Specifically, she testified that when *946 Reverend Thomas exited the vehicle, she heard a gunshot and then she observed the defendant emerge from behind the door of Reverend Thomas' Cadillac holding a gun. She also testified that when she exited the vehicle, she observed Reverend Thomas lying on the ground.
The defendant argues that Blunt's testimony was "suspect at best and unbelievable." In support of this argument, the defendant notes that Blunt received a "favorable" sentence in exchange for her testimony and that she at one point confessed to killing Reverend Thomas, but later recanted her confession.
However, in rendering a guilty verdict, the jury apparently found Blunt's testimony to be credible. It is within a jury's sound discretion to accept or reject in whole or in part the testimony of any witness and the credibility of witnesses will not be reweighed on appeal. State v. Zeno, 610 So.2d 268 (La.App. 5 Cir.1992).
Viewing the foregoing evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of second degree murder. Accordingly, this assignment of error lacks merit.

ERROR PATENT DISCUSSION
Additionally, we have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). We note that the trial court failed to allow credit for time served as required by LSA-C.Cr.P. art. 880. We therefore amend the sentence to reflect that the defendant be given credit for time served in accordance with LSA-C.Cr.P. art. 880.
We also note that the trial court failed to advise the defendant of the prescriptive period for filing post-conviction relief as mandated by LSA-C.Cr.P. art 903.8(C). We therefore remand the case and instruct the trial court to inform the defendant of the provisions of this article by sending written notice to the defendant within ten days of the rendering of this opinion and to file written proof in the record that the defendant received such notice.
Accordingly, for the reasons stated, the defendant's conviction is affirmed. The defendant's sentence is amended to give him credit for time served, and as amended, the sentence is affirmed. The case is remanded for compliance with LSA-C.Cr.P. art. 930.8(C).
CONVICTION AFFIRMED; SENTENCE AFFIRMED AS AMENDED; CASE REMANDED WITH INSTRUCTIONS.