735 So.2d 81 (1999)
STATE of Louisiana
v.
Derrick G. HOPSON.
No. 98-KA-943.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*82 Bertha M. Hillman, Thibodaux, for Appellant.
Harry J. Morel, Jr., District Attorney, Jeffery Rome, Assistant District Attorney, Hahnville, for Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., MARION F. EDWARDS and THOMAS C. WICKER, Jr., Pro Tempore.
EDWARDS, J.
Defendant, Derrick G. Hopson, appeals his conviction for second degree murder. We affirm.
Defendant was originally charged with committing first degree murder in violation of LSA-R.S. 14:30. Defendant pled not guilty at his arraignment. Subsequently, the indictment was amended to reflect that defendant was charged under a bill of information with second degree murder in violation of LSA-R.S. 14:30.1. At the start of trial in the matter, defendant was arraigned and pleaded not guilty to the amended bill. Following completion of the trial, the jury found defendant guilty as charged by a unanimous vote.
Defendant filed a motion for new trial and a motion for post-judgment verdict of acquittal, which motions were denied after a hearing. Defendant waived sentencing delays and the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. From this verdict and sentence, defendant now appeals.
This case arises out of the shooting death of Sean Palmer in Luling on May 10, 1997. In the afternoon of that day, a dice game took place in the area of Paul Maillard and Paul Fredrick Streets. Among those present at that game were Sean Palmer, Cleveland Williams, III, and defendant. After the game broke up, Williams and Palmer went to Palmer's house. Palmer's girlfriend, Jessica Jupiter, was at the house when they arrived.
Later, two men came and knocked on the front door. Palmer answered the door and spoke to the men on the porch. Palmer then went back inside the house and went into his bedroom for a few moments. Palmer emerged from the bedroom and went back out on the porch with the two men. After speaking with the two men a second time, Palmer again went back inside the house. As the victim was closing the door, a shot rang out and he was hit in the neck.
After being shot Palmer yelled for Jessica Jupiter to run out of the back door and he followed her out. As Williams was pushing the door closed, the men on the porch struggled to push the door open. The men on the porch then fired several shots through the door which hit Williams. After being shot, Williams also fled out of the house through the back door. Palmer collapsed behind the house and died.
The St. Charles Parish Sheriff's Office conducted an investigation and identified defendant as one of the two men on the porch who shot Palmer and Williams. As a result of this investigation, a warrant for defendant's arrest was issued and he was subsequently arrested.

*83 ASSIGNMENT OF ERROR NUMBER ONE
Defendant avers that there was insufficient evidence presented to the trial court to convict him of second degree murder. He argues that his conviction should be overturned because the evidence presented by the state was insufficient to prove his identification as a perpetrator of the crime.
The state's first witness was Edith Jupiter. She testified that on the afternoon of May 10, 1997 she was walking in the neighborhood where Palmer was shot when two men in a white car pulled up next to her and asked her where Pernell "Toe" Simons lived. Ms. Jupiter responded that "Toe" lived on Paul Fredrick Street. Later in the day she saw the same two men talking to "Toe", but was not sure if there was a dice game going on at the time. Ms. Jupiter testified that on the day after the shooting she met with someone from the St. Charles Parish Sheriffs Office who showed her two photographic line-ups. Ms. Jupiter testified that she selected a picture as being that of one of the men in the car and one of the men talking to Pernell "Toe" Simons.[1] She was certain of that identification.
The state then called Pernell Simons. He testified that on the day of the shooting he was present at a dice game on Paul Fredrick Street along with Palmer, Williams, and several other people including the defendant. At that time he had known the defendant for ten or eleven years. He testified that later in the evening Palmer told him, in the presence of the defendant, that "he had some big bags of weed." Simons stated that when he left, the defendant and Palmer were speaking to each other. It was acknowledged that Simons was incarcerated at the time of the trial on drug charges unrelated to the present incident. He had previously been convicted of similar drug related crimes. The witness stated that he made no deals in exchange for his testimony.
Jasmine Davis, who lived next door to the house in which the victim was killed, testified that she saw two men standing on the victim's porch. She then heard shots.[2] Before running to the back of her house, she saw the two men jump into a white car and drive away. She was not sure, but thought that the car was a new Mustang.
Jessica Jupiter testified that she, Williams and Palmer were in the apartment when someone knocked on the door. Williams was sitting behind the door. Palmer did not open it wide. She could not see who was outside. The victim told her that she was "too nosey." According to the witness Palmer answered the door and someone outside started shooting. Once the shooting began Palmer told her to run. She fled out of the back of the house to hide in a shed behind the house. She testified that she did not get a good look at the shooters and could not identify them.
Cleveland Williams, III testified that on the afternoon of the shooting two men in a car inquired about a dice game and, in response, a group of men began to play a game. The man in the car lost money in the game. After it broke up, Williams went to Palmer's house. While he was inside someone knocked and Palmer answered the door. Williams testified that he looked out the door and recognized the two men at the door as the two men who had earlier inquired about a dice game. Palmer went out on the porch for a few moments and then came back inside and went into the bedroom. After remaining in the bedroom a few moments, Palmer then went back outside on the porch. *84 Upon returning to the house a second time, Palmer was trying to shut the door when a shot rang out and Palmer was hit. Neither Palmer nor Williams had a gun. Williams attempted to push the door closed and was shot through the door. As he ran into the yard, he saw the white car pull off. Williams had no doubt that defendant was one of the persons on the porch. Williams identified defendant in a line-up as having been at the dice game and on the porch when Palmer was shot.
On cross examination Williams admitted that in a statement to the police after the shooting he claimed that he could not identify the person who shot both him and Palmer. He testified that he denied that he could identify defendant in his statement to the police because he was hysterical from having been shot. In his statement, as well as in his testimony, Williams stated that he believed that both the men on the porch had guns and were shooting.
Billy LeBlanc, technician with the St. Charles Parish Sheriffs Department, testified that he collected evidence at the crime scene on the night of the shooting. He collected spent cartridges and projectiles from the scene along with a loaded handgun clip. He also identified and photographed two trails of drops of what appeared to be blood. One trail led from the front door, through the house, into the back-yard and ended where Palmer collapsed. Near the blood in the house, Le-Blanc collected a plastic bag filled with green vegetable matter which he felt was marijuana. The second trail led from the front door to the driveway. The witness also found a small container of what appeared to be crack cocaine and a shoe box with more (of what he believed was) marijuana. LeBlanc was present at the execution of a search warrant on the defendant's auto, a white 1987 Ford Taurus. At that time he recovered from the back of the vehicle a white diaper with 15 small plastic bags of a substance he identified as marijuana. Following objection by the defense, the trial judge instructed the jury that the matter had not been tested and proven to be drugs. The defense elicited testimony that no lab tests were done on the material. Nevertheless, the witness testified that he had seen marijuana many times in his 23 years as a technician. No gun was ever recovered from the scene. No blood was found in the car.
Dr. Susan Garcia performed the autopsy on Palmer. She testified that Palmer died from a single gunshot wound to the neck. The projectile that produced the wound was recovered from Palmer's body and turned over to the police. The state also called Louise Waltzer as an expert in firearm examination. She testified that the projectiles and cartridges collected at the crime scene were fired from the same gun.
Detective Donnie Smith testified that he responded to the report of a shooting. He noticed a spent bullet casing, a fully loaded magazine and blood inside the house. Following a trail of blood around the side of the house, he found the victim.
Detective Pamela Negrotto testified that on the night of the shooting she went from the crime scene to the hospital to interview Cleveland Williams. He told her he had been shot by someone he played dice with earlier that day. He told her that Pernell "Toe" Simons also knew the perpetrator. Williams identified defendant's photo from a photographic lineup as the man who shot him. Such lineup was also shown to Edith Jupiter who identified photo # 3, that of the defendant, as the man at the dice game. Jessica Jupiter was unable to make an identification.
Detective Robert Lynch testified that a line-up was presented to Williams which contained a photo of defendant. Williams said he was "one hundred percent positive that that was the one that shot him and Sean." The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the *85 essential elements of the crime beyond a reasonable doubt.[3]State v. Mussall, 523 So.2d 1305 (La.1988); State v. Styles, 96-897 (La.App. 5th Cir.3/25/97), 692 So.2d 1222, 1232, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Guccione, 96-1049 (La.App. 5th Cir.4/29/97), 694 So.2d 1060, writ denied, 97-2151 (La.3/13/98), 712 So.2d 869. The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Guccione, supra. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Guccione, supra.
The defendant in this case was charged with second degree murder. Louisiana Revised Statute 14:30.1 states in pertinent part that:
A. Second degree murder is the killing of a human being.
(1) When the offender has a specific intent to kill or to inflict great bodily harm;...
At trial defendant did not present any witnesses. On appeal defendant seeks to refute the evidence presented against him by denoting inconsistencies in the witnesses' statements. Defendant points to the statement of Jasmine Davis that the defendants drove away in a white Mustang, and that defendant's auto was a white Ford Taurus. He also alludes to the difference in the statements of Williams and Jupiter as to where Williams was seated and whether he got up to see who knocked on the door. Defendant also states that there was a trail of blood leading to the driveway, indicating that the perpetrator was injured. However, the defendant showed no sign of injury when arrested three days later, and there was no blood in the car.
It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses to overturn a trial court on its factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983); State v. Jiron, 96-319 (La.App. 5th Cir.10/1/96), 683 So.2d 769, 771. When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Jiron, supra. Both this Court and the Louisiana Supreme Court have held that it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State v. Styles, 692 So.2d at 1233; State ex rel. Graffagnino v. King, 436 So.2d 559, at 563.
In the present case, the testimony of Williams was quite adamant and consistent that he saw and recognized the defendant on the porch at the scene of the murder. He also made an in court identification. In his earlier statements to the police, according to the officers, Williams identified the defendant as the man who shot him and Palmer, although he could not identify defendant's companion from a lineup. Williams did not testify at trial that the defendant was the one who shot the victim, or specifically identify him as such. He testified emphatically that the two men were both attempting to force their way into the victim's home, and that they started shooting.
La. R.S. 14:24 states that:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and *86 abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
We discussed specific intent relative to principal to second degree murder, in State v. Meyers, 95-750 (La.App. 5th Cir.11/26/96), 683 So.2d 1378. There we said:
... under LSA-R.S. art. 14:24, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. State v. Brooks, 505 So.2d 714 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), rehearing denied, 484 U.S. 1021, 108 S.Ct. 737, 98 L.Ed.2d 684 (1988). It is not enough to find merely that his accomplice had the necessary mental state, since this intent cannot be imputed to the accused. State v. Holmes, 388 So.2d 722 (La.1980).
Thus in order to support a conviction as a principal to second degree murder, the State must show that the defendants had specific intent to kill or to inflict great bodily harm. See State v. Francis, 486 So.2d 346 (La.App. 3rd Cir. 1986), writ denied, 492 So.2d 1216 (La. 1986).
Specific intent is: "that state of mind which exist when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Since specific intent is a state of mind, it need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. See State v. Graham, 420 So.2d 1126 (La.1982).
When circumstantial evidence is used to show specific intent, LSA-R.S. 15:438 should be considered as it provides a rule regarding the use of such evidence. The rule directs the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove, and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Lilly, 468 So.2d 1154 (La.1985).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard. State v. Huizar, 414 So.2d 741 (La.1982).
In addition to the testimony of Williams, there was testimony by Simons that the victim told him in the presence of the defendant he had marijuana to sell. In the bedroom of the house, where the victim went after initially speaking to the men on the porch, police found and identified a box of what appeared to the crime scene technician (of 23 years experience) to be marijuana, and a container of crack cocaine. In defendant's car 15 bags of, what was apparently marijuana, were discovered. Although the substances were not tested and positively identified as contraband, we find the jury could have reasonably concluded that they were, indeed, marijuana. We further find that the jury could have reasonably concluded that the murder took place during an illegal drug transaction gone awry between the victim and the defendant. One or both of the men had guns, both attempted to break down the door of the victim's home and one or both of them fired at the deceased and Williams. From the circumstances of the transaction and the actions of the defendant, and applying the law as enunciated in State v. Meyers, supra, we hold that there was sufficient evidence for the jury to have reasonably concluded that the men on the porch, one of whom was the defendant, shared the specific intent to murder the victim during or after the drug transaction. This assignment of error is without merit.

*87 ASSIGNMENT OF ERROR NUMBER TWO
Defendant avers that the trial court erred in overruling defendant's objection to the introduction of other crimes evidence.
Hopson argues that the trial court erred in overruling defendant's objection to testimony about marijuana found in his car because that testimony constituted inadmissable evidence of other crimes.[4] Defendant argues that he was not given proper notice of this evidence and no hearing was conducted in accordance with State v. Prieur, 277 So.2d 126 (La.1973). The state argues that the testimony was properly admitted because the testimony was introduced pursuant to a valid exception to the blanket prohibition against other crimes evidence.
The testimony to which defendant objects was that of Billy LeBlanc, that pursuant to search of defendant's car, fifteen plastic bags of marijuana were found wrapped in a diaper. At that point in the technician's testimony, defendant objected, claiming that a hearing should have been held before this evidence of other crimes was admitted. During a side bar conference the state pointed out that defendant had been notified prior to trial that the state intended to use this evidence and argued that the testimony about the marijuana was admissible as evidence of motive. At the conclusion of the conference, the trial court ruled that the defendant had been given prior notice, and that the evidence was admissible.[5]
Generally, evidence of other crimes, or bad acts, is not admissible. State v. Evans, 97-1030 (La.App. 5th Cir.4/15/98), 712 So.2d 941. However, when such evidence tends to prove a material issue and has independent relevance other than showing that the defendant is of bad character, it may be admitted by certain statutory and jurisprudential exceptions to this exclusionary rule. State v. Evans, supra; State v. Silguero, 608 So.2d 627 (La.1992), on remand, 616 So.2d 1346 (La.App. 3rd Cir.1993). These exceptions are codified in LSA-C.E. art. 404(B)(1) which provides in pertinent part:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state argued at trial that this evidence was admissible to show motive. On appeal the state does not argue motive as it did in the trial court but instead responds that the testimony about the marijuana was properly admitted because it relates to conduct that constitutes an integral *88 part of the act or transaction that was the subject of the trial.
While the Louisiana Code of Evidence prohibits the use of evidence of other crimes or wrongful acts to prove the character of a person in order to show that he acted in conformity therewith, such evidence is admissible "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." State v. Hopson, 97-509 (La.App. 5th Cir.11/25/97), 703 So.2d 767. Formerly known as "res gestae," evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. State v. Hopson; State v. Brown, 95-124 (La.App. 5th Cir.5/30/95), 656 So.2d 1070.
The Louisiana Supreme Court in State v. Brewington, 601 So.2d 656, 656-657 (La. 1992), held that the defendant's display of crack cocaine and a pistol to an acquaintance one and one-half hours before the victim's death, and three hours after the victim was last seen alive in defendant's presence "formed an inseparable part of the state's substantial circumstantial evidence linking him to the shooting." The Brewington Court further stated, 601 So.2d at 657:
This court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. (Citations omitted.)
This Court, in State v. Camp, 580 So.2d 957, 960 (La.App. 5th Cir.1991), held that a witness' reference to the knife found on defendant after he was apprehended for burglary, constituted an integral part of the crime. The Camp court concluded that the reference to the knife was admissible under LSA-C.E. art. 404(B) as res gestae evidence in the defendant's burglary trial. See also State v. Hopson, supra.
Here the state presented testimony that the victim told Pernell Simmons, in the presence of the defendant, that he had marijuana to sell and argues that the shooting occurred when defendant came to the victim's home to purchase marijuana. The evidence[6] found in defendant's car completes the story of the murder by proving its immediate context of happenings near in time and place. It is part of the whole picture and constitutes an integral part of the crime.
We find the evidence was properly admitted pursuant to the "res gestae" exception to LSA-C.E. art. 404.

ERROR PATENT DISCUSSION
We have reviewed this record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990); and State v. Godejohn, 425 So.2d 750 (La.1983).
LSA-C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence becomes final within which to apply for post conviction relief. Subpart C of the article requires that the trial court inform the defendant of the three year prescriptive period at the time of sentencing. The trial court in this case incorrectly informed *89 defendant that the three year period began to run on the day sentence was imposed. According to the above article, the prescriptive period commences when the "judgement of conviction and sentence has become final," and defendant must be so informed. The trial judge is instructed to inform the defendant of the correct provisions of this article by sending appropriate written notice to him within ten days of this Court's opinion and to file written proof in the record that the defendant received such notice. State v. Bates, 96-9 (La.App. 5th Cir.4/16/96), 673 So.2d 1085; State v. McCorkle, 97-966 (La.App. 5th Cir.2/25/98), 708 So.2d 1212.
For the foregoing reasons, the conviction of defendant is affirmed. The trial judge is ordered to inform defendant of the provisions of La.Code Cr. Pro. art. 930.8(C), by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. This case is remanded.
AFFIRMED AND REMANDED.
NOTES
[1] This photo was later identified as being that of defendant., see infra.
[2] At trial she testified that she heard ten or eleven shots; but in a statement given to the police the night of the shooting, she stated that she heard five shots. She also stated the car drove off normally, although in her statement she told police the two had "burned rubber".
[3] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979),
[4] Defendant cites LSA-C.Cr.P. art 770 governing motions for mistrial; but at trial, defendant did not ask for a mistrial because of the other crimes evidence. A failure to ask for relief under this article precludes a defendant from raising the issue of mistrial on appeal. State v. Sias, 97-283 (La.App. 5th Cir.1/27/98), 706 So.2d 650, writ denied, 98-0505 (La.6/26/98), 719 So.2d 1056; State v. Francis, 665 So.2d 596 (La.App. 5th Cir. 1995).
[5] On appeal, defendant does not argue that the admission of this evidence was not in conformity with the procedures set out in State v. Prieur, 277 So.2d 126 (La.1973). Nevertheless, we note that no such notice is required as to evidence of offenses which are a part of the res gestae, or convictions used to impeach defendant's testimony. State v. Van Winkle, 97-307 (La.App. 5th Cir.10/28/97), 701 So.2d 1076.
[6] In this context we note again that although the substance found in defendant's car was not tested and proven to be marijuana, the jury was properly so instructed, and could properly draw an inference based on the long term experience of LeBlanc.