768 So.2d 173 (2000)
STATE of Louisiana
v.
Toller EAST.
No. 99-KA-1379.
Court of Appeal of Louisiana, Fifth Circuit.
July 25, 2000.
*175 Paul D. Connick, Jr., District Attorney, Ellen S. Fantaci, Terry M. Boudreaux, Quentin Kelly, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Appellee.
Alvin G. Baham, Gretna, Louisiana, Attorney for Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., MARION F. EDWARDS and THOMAS C. WICKER, Jr., Pro Tempore.
EDWARDS, Judge.
Defendant Toller East appeals his conviction of being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1. We affirm.
On November 24, 1998, a bill of information was filed charging East with one count of being a felon in possession of a weapon. At his arraignment defendant pled not guilty. On April 7, 1999, as trial began, East indicated that he wished to be tried by a judge. After he was informed of his right to trial by jury and waived that right, trial commenced. At the conclusion of the trial, the court found East guilty as charged.
On April 26, 1999, post trial motions for new trial and for post verdict judgment of acquittal were filed. Subsequently, East filed a second motion for new trial based on newly discovered evidence. A hearing was held on the motion for new trial and was denied. East waived his sentencing delays and the trial court sentenced him to a term of ten years to be served without benefit of parole, probation, or suspension of sentence and a fine of $1,000.
At trial, the State called Deputy Eddie Klein. He testified that, at approximately 12:30 a.m. on September 5, 1998, he was on Wall Street in the Bunche Village area investigating a complaint of narcotic sales. The deputy and his partner set up a point of concealment and watched the location named in the complaint. From the point of concealment, the deputy saw East standing in the driveway on the side of the residence they were watching. While the deputy watched, East was approached by several people. As each person approached, East and the person would engage in a brief conversation. East would then walk to the street, look around and then engage in a hand-to-hand transaction with the person.
The deputy and his partner watched defendant for approximately half an hour during which time East engaged in five to ten transactions. After each transaction, East would knock on the side door of the residence and a male would come out and hand something to East. After watching for approximately half an hour, the deputy and his partner tried to get closer to East. The driveway was lighted, and there was no one in the driveway with East at that time. As they approached, East saw the deputies and began to run away, down the driveway, toward the rear of the house. When the officers were approximately 20 feet away, they yelled for East to stop, but he continued to run. The officers gave chase. When the officers were 10 to 15 feet away, East went to the front part of his waistband, came out with a gun and threw it on the ground. Deputy Klein *176 described the gun as small, either nickel plate or chrome. The officer screamed "Gun, gun", to alert his partner. Klein tackled East from behind, and placed him under arrest. Klein's partner retrieved the weapon.
The State then called Deputy Jeffery Lehrmann who testified that he was with Deputy Klein investigating a complaint of narcotics transactions. Deputy Lehrmann observed East engage in five to ten hand-to-hand narcotics transactions in the span of approximately 25 to 30 minutes. Deputy Lehrmann and his partner moved closer to East's location, but East saw them and began to run. As East ran, Deputy Lehrmann saw him reach into his waistband, pull out and discard a gun. Deputy Lehrmann immediately retrieved the weapon. Deputy Lehrmann identified the gun introduced at trial as the gun that East pulled from his waistband and discarded. He personally handed it to the crime scene technician who tagged it for identification.
The State presented the testimony of Deputy Richard Deauzat of the Jefferson Parish Sheriff's Office. He testified that he was working in the early morning of September 5, 1998 when he logged into evidence a gun that was recovered by Deputy Lehrmann. The gun was introduced into evidence and Deputy Deauzat identified the gun as the one that was given to him by Deputy Lehrmann.
Hillary Jones testified for the defense. He stated that his mother lives in the Wall Street house where the incident took place. On the night of the incident, East (referred to by the witness as "Mr. Harris") gave him a ride to his mother's house, and while Jones went inside, East remained outside in his car. Jones heard Gregory Garner, his mother's boyfriend, knocking and when he opened the door, he saw the police cars. A policeman pushed him down to the floor and searched the house. East did not have a weapon while Jones was in the car with him. At no time after he arrived home was anyone going back and forth to the house retrieving anything. On cross-examination, Jones stated that he himself had never been convicted of any crimes.
Gregory Garner testified that he went to the house on Wall Street on the night of the incident to get a bag of clothes. Garner testified that when he arrived at the house East was standing in the street near his car. Garner got a good look at him. East had no gun. Jones let him into the house, he got his bag of clothes and talked to Jones's brother, Avery, for a few minutes. As Garner was speaking to Avery, the police crashed through the back door. According to Garner, the police made him lie on the floor. Garner admitted to having been convicted of possession of cocaine and possession of cocaine with intent to distribute.
Jocelyn Ball testified that she spoke to East about five minutes before the police chase. She hugged him, and he had no gun in his waistband.
East testified on his own behalf. He stated that on the night of the incident, after he dropped Jones off he stayed outside talking to his cousin Beverly Stokes. As soon as he shook Stokes' hand, the police arrived and knocked him into the yard, face down. The police asked him about drugs, of which he denied knowledge, and then handcuffed him. After they searched the house and the yard, they arrested him for trespassing. The officers never identified themselves, and East never threw a gun out. He never saw the gun before, prior to trial. The officers who testified were not the ones who knocked him down.
Beverly Stokes testified that on the night of the incident, he was talking to East on the sidewalk when the police knocked he and East down. Then the police took him into the yard. Stokes stated that the gun was not found on East when police searched him, but that they did search the back yard of the house and found a gun.
*177 On rebuttal, the State called Hillary Jones. At that time, the State produced documents indicating that a person with the same name, address and birth date, and with a signature resembling Jones', had been found guilty of possession of cocaine and simple robbery. Captain Merril Boling, a fingerprint expert, testified that the witness Jones' fingerprints matched the fingerprints in the above records. The Court took judicial notice of those records.
East asserts that the evidence presented at trial was insufficient to show that he possessed a firearm. The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.[1]
In this case, East was convicted of possession of a firearm by a convicted felon. The elements which must be proven in order to convict an accused of unlawful possession of a firearm by a convicted felon are: (1) possession of a firearm, (2) conviction of an enumerated felony, (3) absence of the ten-year statutory period of limitation, and (4) general intent to commit the offense.[2]
Here, East stipulated to the prior conviction of possession of cocaine, a listed felony in LSA-R.S. 14:95.1(A). The record of these felony proceedings was admitted into evidence. At trial, the State and the defense presented two different versions of the events that occurred on the night on which East was arrested. The State presented the direct testimony of Deputies Klein and Lehrmann that they saw East remove a gun from his waistband and discard it. The gun was recovered and introduced at trial. East denied having a gun or being involved in drug transactions, testifying that he was simply shaking the hand of Beverly Stokes when he was knocked to the ground without warning and arrested. Several witnesses testified that East had not possessed a gun on the night in question.
It is not the function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses to overturn a trial court on its factual determination of guilt.[3] When the trier-of-fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness.[4] Both this Court and the Louisiana Supreme Court have held that it is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence.[5]
In the present case, the trial court accepted the testimony of the police officers that they saw defendant drop a gun as he ran. East's status as a convicted felon was properly proven. Viewing the evidence as set forth in the light most favorable to the prosecution, we find that a rational trier of fact could have found East guilty beyond a reasonable doubt of possession of a firearm. This assignment of error is without merit.
East further alleges that the trial court erred in denying his motion for new trial on the basis of newly discovered *178 evidence "which was so clearly exculpatory that a new trial was required in the interest of justice".
Motions for new trial are governed by La.Code Crim. P. art. 851, which states in applicable part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
(1) The verdict is contrary to the law and the evidence;
. . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;
. . . .
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
The first motion for new trial averred that the verdict was contrary to the law and the evidence; the second motion is premised on newly discovered evidence. At trial, counsel urged the newly discovered evidence grounds, and additionally argued that a new trial would serve the ends of justice.
Under Louisiana jurisprudence, when the motion for new trial is based on newly discovered evidence, the following four requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) the evidence must be material to the issues at trial; and (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial.[6] The trial court's ruling regarding whether these requisites are found is entitled to great weight, and a denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion.[7]
After a careful review of the record, we cannot say that defendant has met all the requisites for the granting of his motion for new trial based upon newly discovered evidence. In his motion for a new trial, East, as required by La.Code Crim. Pro. art. 854, gave the names of the witnesses who would testify, the facts they might establish, and their availability. However, he did not show that, notwithstanding the exercise of reasonable diligence, the evidence was not discoverable before or during trial.
In addition, testimony on the allegation that East was arrested in front of the house was made at trial by Beverly Stokes. Cumulative evidence as to an issue fairly disclosed and decided at the trial is usually not of the nature that would probably produce an acquittal.[8] Further, the testimony sought to be produced does not involve direct testimony about East's possession of the gun. East has failed to show how the evidence would probably produce an acquittal in the fact of the direct testimony by the two deputies.
Further, at the hearing on the motion for new trial, defendant argued that a new trial would serve the ends of justice pursuant to La.Code Crim. Pro. art. *179 851(5). However, this Court has held that a claim for new trial based on this ground presents nothing for appellate review.[9]
Our error patent review reveals the following. East's original motion for new trial claimed that a new trial should be granted because the verdict was contrary to the law and the evidence. During the hearing, East's argument focused on the newly discovered evidence. He also argued that a new trial should be granted because it would serve the ends of justice even though that basis was not included in either motion for new trial. Although the trial court did not specifically deny both new trial motions at the conclusion of the hearing, it is apparent that East abandoned the argument asserted in his original motion for new trial. The action of the trial court served to deny both motions.
The trial court failed to inform defendant of the prescriptive period for post-conviction relief, and that such period began to run on the date that the judgment becomes final, as required by La. Code Crim. Pro. art. 930.8. That article was amended effective August 15, 1999, and shortened the prescriptive period from three years, as provided for at the time of sentencing, to two years. The application of the amended prescriptive period in this case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment.[10] Therefore, we direct the district court to inform East of the correct provisions of this article by sending appropriate written notice to him within ten days of the rendering of this opinion, and then to file written proof in the record that said notice was received.[11]
For the foregoing reasons, the conviction is affirmed. The trial judge is ordered to inform East of the provisions of La.Code Cr. Pro. art. 930.8(C), by sending appropriate written notice to defendant within ten days of the rendition of this opinion and to file written proof that he received the notice in the record of the proceedings. This case is remanded.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); State v. Hollins, 99-278 (La.App. 5th Cir. 8/31/99), 742 So.2d 671, 678.
[2] LSA-R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Johnson, 98-604 (La.App. 5 Cir. 1/26/99), 728 So.2d 901, 906, writ denied, 99-0624 (La.6/25/99), 745 So.2d 1187.
[3] State v. Richardson, 425 So.2d 1228 (La. 1983); State v. Hopson, 98-943 (La.App. 5 Cir. 3/30/99), 735 So.2d 81, 85, writ denied, 99-1315 (La.11/1299), 749 So.2d 650.
[4] State v. Hopson, supra, at p. 85.
[5] State v. Hopson, supra at p. 85; State v. Styles, 96-897 (La.App. 5th Cir. 3/25/97), 692 So.2d 1222, 1233.
[6] La.Code Crim. Pro. art. 854; State v. Brown, 93-1001 (La.App. 5th Cir. 3/29/94), 636 So.2d 964, 966.
[7] State v. Knapper, 555 So.2d 1335, 1339 (La. 1990); State v. Brown, supra, at p. 966.
[8] State v. Lavene, 343 So.2d 185 (La.1977); State v. Wiley 614 So.2d 862, 876 (La.App. 2 Cir.1993).
[9] State v. Cortez, 503 So.2d 76, 79 (La.App. 5th Cir.1987); State v. Green, 469 So.2d 1161, 1163 (La.App. 5th Cir.1985). See also State v. Lewis, 97-2854 (La.App. 4th Cir. 5/19/99), 736 So.2d 1004, 1024.
[10] See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189, 1201; State v. Boles, 99-662 (La.App. 5th Cir. 11/10/99), 750 So.2d 1059.
[11] State v. Stelly, 98-578 (La.App. 5 Cir. 12/16/98), 725 So.2d 562 564; State v. Boles, supra.