852 So.2d 1050 (2003)
STATE of Louisiana
v.
Carnell BOLDEN.
No. 03-KA-0266.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 2003.
*1053 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, David P. Wolff, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Carnell Bolden, was convicted of one count of aggravated incest, a violation of La. R.S. 14:78.1, and one count of attempted aggravated crime against nature, a violation of La. R.S. 14:89.1 and R.S. 14:27. He was sentenced to ten years at hard labor on count one and six years at hard labor on count two, with the sentences to run concurrently, and with the sentence on count two to be without benefit of parole, probation, or suspension of sentence and no good time. Additionally, the trial court ordered defendant to register as a sex offender. Defendant now appeals from his convictions and sentences.

FACTS
The State introduced evidence at trial to show that, on or between January 1, 1998 and December 31, 1999, defendant, age 33, engaged in sexual intercourse with his 13-year-old niece, T.B., on several occasions, and that he attempted to place his penis inside her mouth on one occasion.
T.B. recounted several instances where defendant sexually abused her. She testified that, in 1998 or 1999 during the school year but before Christmas, defendant touched her vagina and breasts in his car when he was teaching her how to drive in the Walgreen's parking lot; that in January of 1999 after New Year's Day, defendant took her to Bourbon Street, bought her a daiquiri, took her to the Sugar Bowl Motel on Airline Highway and put his penis in her vagina; and that on that same date at the Sugar Bowl Motel, defendant asked her to put her mouth on his penis and tried to push her head down toward his penis but was unable to do so. She indicated that she did not drink alcohol, and that she did not remember ever having alcohol before.
T.B. testified that, on another occasion, defendant took her near a levee in Orleans Parish, laid her down on the ground, played with her breasts, kissed her, took off her clothes, and put his penis in her vagina; that the next incident occurred when she was babysitting defendant's children at the apartment he shared with his wife and two young children, that T.B. was *1054 sleeping in the bed with the children, that defendant came into the room, pushed one of the children over, put his mouth on T.B.'s vagina, then put his penis inside her vagina.
T.B. testified that another time, T.B. was at her grandmother's house on a holiday playing a game in her grandmother's room, that defendant put the children outside the room, closed the door, and touched her, but that he could not do anything else because the children were knocking on the door; and that on another occasion one night T.B. went with defendant to pick up his friend, Felinda Bourgeois, from work at the K-Mart in Elmwood Shopping Center, that defendant took her on a dark road, that defendant touched and kissed her in the car, that defendant told her to get out the car, that when she did, defendant put T.B.'s stomach against the car and tried to put his penis in her buttocks.
T.B. testified that these incidents occurred when she was 13 years old and that she turned 14 on September 19, 1999. She further testified that she had to take care of her younger brothers when her mother and father were not at home.
Era Perilloux testified that she had been best friends with A.B., T.B.'s mother and defendant's sister, for many years, that they lost contact at one point, that she and T.B. redeveloped a relationship after Ms. Perilloux's daughter and T.B. started going to Bunche Middle School, and that T.B. called her "Nanny." Ms. Perilloux explained that, in 1998 or 1999, T.B. told her that her father and defendant were touching her. Ms. Perilloux told T.B. she was going to tell T.B.'s mother, but T.B. started crying and asked her not to tell her mother or the police because they would take her brothers away from her mother. Ms. Perilloux agreed not to tell T.B.'s mother, but she told T.B. that if it happened again, to go to the school counselor. Ms. Perilloux testified that T.B. came to live with her after T.B. told the school counselor about the sexual abuse.
Dr. Scott Benton, who was qualified as an expert in the field of child forensic medicine and child sexual assault, testified that he evaluated T.B. on July 8, 1999, that T.B. told him her father and defendant had sexually abused her, that defendant had put his penis in her vagina, that T.B. had a high fever of 101.6, that T.B. tested positive for Chlamydia trachomatis, a sexually transmitted disease, that this disease was almost exclusively transmitted by sexual contact, that it was a serious disease that could cause death, that most men who had this disease had no signs of the infection, and that T.B.'s mother also had a Chlamydia infection.
Angela Tyrone, a social worker at Bunche Middle School, testified that, on May 20, 1999, T.B. came to her office and told her she was being touched sexually all over her body by her father, C.N., and her uncle, Carnell (defendant).
A.B., T.B.'s mother and defendant's sister, testified that she had five children, that T.B. was the oldest, and that the other four were boys. She further testified that T.B. used to go to defendant's house once a week, usually on weekends. A.B. admitted that she would sometimes walk to the barroom near her house at night, that she would sometimes be gone for three or four days at a time, and that she had a drug problem. A.B. explained that she asked defendant to talk to T.B. because T.B. was having problems in school. A.B. denied asking defendant to keep T.B. She testified that, at one time, she had a sexually transmitted disease.
A.N., age 16, testified that she knew T.B. and that she knew defendant because he and her grandmother were brother and *1055 sister. She further testified that in December of 1998, T.B. told her that defendant and her father were having sex with her, that on one occasion defendant bought T.B. a daiquiri, took her to the Sugar Bowl Motel, and forced her to have sex with him, that T.B. told her that defendant then tried to force her to perform oral sex, but she did not do it, and that T.B. told her not to tell anyone because she wanted to wait until she turned 18 so she could take care of her family.
Detective JoLynn Cummings of the Jefferson Parish Sheriff's Office testified that, on May 20, 1999, she met with T.B. at Bunche Middle School and that T.B. told her she had been sexually abused by her uncle, Carnell Bolden, and her father. Detective Cummings then scheduled an interview at the Jefferson Parish Children's Advocacy Center.
Omalee Gordon, a forensic interviewer with the Children's Advocacy Center, testified that she interviewed T.B. on May 26, 1999 and made two separate videotapes of the interviews because there were two separate perpetrators. She identified State's Exhibit 1 as the videotape of the interview and testified that it was a fair and accurate documentation of the interview. The videotape was played for the jury.
The following witnesses testified for the defense:
Juanita Bolden testified that she was defendant's wife, that they had been married for ten years, that they had a seven-year-old son and a five-year-old daughter, that defendant was a very loving husband, and a good provider, that T.B. had only been to her house one time and had only spent the night that one time, that T.B. never babysat her children, that she got up every hour every night to check on her children, and that T.B. never had an opportunity to be alone with defendant in her apartment. On cross-examination, Mrs. Bolden admitted that she and her husband drove separate vehicles and did things separately, that her husband liked to play pool, and that he played pool in New Orleans at a daiquiri shop which had a pool table.
Eva Mae Bolden testified that she was defendant's mother and T.B.'s grandmother, that T.B. wanted to get out of her house because she had no freedom, that she did not believe the allegations T.B. had made against her son, that she had seen T.B. drink alcohol before, and that T.B. did not always tell the truth.
Felinda Bourgeois testified that T.B. was her boyfriend's cousin, that on one occasion she got off work early, that she went outside and defendant and T.B. were waiting for her, that when she got into the car, T.B. laughed and "clowned around" with her and defendant, and that it was light outside when they picked her up.
S.B., age 16, testified that defendant was her uncle, and that in T.B.'s present living arrangement at Ms. Perilloux's, T.B. could talk on the phone with and see boys which she could not do at home.
Defendant denied engaging in sex with T.B. He testified that A.B. sent T.B. to his house so she could stay with defendant and he could help her financially and with her homework. He then testified that T.B. only spent the night one time at his house and she only came to his house approximately two times. Defendant testified that T.B. lied about the sexual abuse because she did not want to live at home and she did not want to live with him because he had strict rules. He claimed that T.B.'s mother had threatened to send T.B. to live with him.

SUFFICIENCY OF EVIDENCE
When issues are raised on appeal regarding the sufficiency of evidence and one or more trial errors, the reviewing *1056 court should first determine the sufficiency of the evidence. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any issues regarding trial errors become moot. State v. George, 95-0110, p. 6 (La.10/16/95), 661 So.2d 975, 978; State v. Noil, 01-521, p. 12 (La.App. 5 Cir. 12/26/01), 807 So.2d 295, 305.
Accordingly, we will first address the defendant's assignment of error regarding the sufficiency of the evidence.
The standard for appellate review of the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. State v. Lapell, 00-1056 (La.App. 5 Cir. 12/13/00), 777 So.2d 541, 545, writs denied, 00-3546 (La.9/14/01), 796 So.2d 675 and 01-439 (La.1/4/02), 805 So.2d 1192.
Defendant was charged with and convicted of aggravated incest, a violation of La. R.S. 14:78.1, and attempted aggravated crime against nature, violations of La. R.S. 14:89.1 and R.S. 14:27.
La. R.S. 14:78.1 provides in pertinent part:
A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
B. The following are prohibited acts under this Section:
(1) Sexual intercourse, sexual battery, aggravated sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
La. R.S. 14:89.1 provides in pertinent part:
A. Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
....
(6) When the victim is under the age of seventeen years and the offender is at least three years older than the victim.
La. R.S. 14:89 provides in pertinent part:
A. Crime against nature is:
(1) The unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:42, *1057 14:42.1 or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
La. R.S. 14:27 provides in pertinent part:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
....
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
In the instant case, defendant argues that the evidence was legally insufficient to convict him of aggravated incest and attempted aggravated crime against nature. He contends that because of the discrepancies and conflicting details in the victim's story, the State failed to prove the elements of the crimes beyond a reasonable doubt. Defendant does not dispute that the victim was his biological niece, or that she was 13 years old and he was at least three years older at the time of the alleged crimes.
At trial, T.B., the victim, testified that defendant sexually abused her when she was 13 years old. She described several instances of the abuse and testified that defendant had engaged in sexual intercourse with her on several occasions and that he had tried to force her to perform oral sex on him on one occasion. Although defendant denied sexually abusing the victim, the jury apparently found the victim's testimony to be more credible.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. State v. White, 472 So.2d 130, 132 (La.App. 5 Cir. 1985). Furthermore, the credibility of witnesses will not be reweighed on appeal. State v. Rowan, supra. "[T]he Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the fact finder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293, writ denied, 01-3171 (La.9/30/02), 825 So.2d 1190.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hawkins, 99-217 (La.App. 5 Cir. 7/2/99), 740 So.2d 768, 769; State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1233, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual finding. State v. Ruffin, 02-798 (La.App. 5 Cir. 12/30/02), 836 So.2d 625, 630.
In brief, defendant points out inconsistencies between the victim's testimony and the other witnesses' testimony *1058 as his basis for his claim that the evidence does not support his convictions.
"When a witness is impeached, this simply means the jury, as the trier of fact, is presented with evidence which it could consider and weigh in determining the credibility, or believability, of a witness. Simply because the witness may have been impeached by prior inconsistent statements does not mean that the jury is prohibited from believing anything said by the witness. The inconsistencies in the witness's statements are one of any number of factors the jury weighs in determining whether or not to believe a witness's trial testimony. State v. Bender, 598 So.2d 629 (La.App. 3rd Cir.1992), writ denied, 605 So.2d 1125 (La.1992)."
State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 00-150 (La.6/30/00), 765 So.2d 1066, 99-3477 (La.6/30/02), 765 So.2d 1062 (quoting State v. Dunn, 30,346 (La.App. 2nd Cir.2/25/98), 708 So.2d 512, 517).
In the instant case, there is no internal contradiction or irreconcilable conflict with physical evidence, because there was no physical evidence to link defendant to the crime. The primary evidence in this case was T.B.'s testimony of defendant's sexual abuse. There was no internal contradiction in the victim's testimony; her testimony was consistent. Therefore, T.B.'s testimony, found credible by the trier of fact, was sufficient support to find defendant guilty of the crimes with which he was charged.
Defendant also argues that T.B. could not recall when any of the alleged incidents took place. However, the State provided defendant as much information as possible regarding the incidents of sexual abuse: that the incidents occurred at the Walgreen's parking lot in 1998 or 1999 during the school year but before Christmas, at the Sugar Bowl Motel in January of 1999, near the Elmwood Shopping Center, at defendant's apartment, and at T.B.'s grandmother's house. The State informed defendant that T.B. was 13 years old when the incidents occurred and that she turned 14 on September 19, 1999. Further, the dates of the offenses were not essential elements of the crimes, and courts have recognized that in sexual abuse cases that continue over time, exact dates often cannot be supplied. State v. Dixon, 628 So.2d 1295, 1299 (La.App. 3 Cir.1993) (citing State v. Kohl, 524 So.2d 781, 784 (La.App. 3 Cir.1988)).
Accordingly, we find that the evidence was sufficient under Jackson to convict defendant of aggravated incest and attempted aggravated crime against nature.

ASSIGNMENTS OF ERROR
In defendant's first allegation of error, he argues that the trial court erred in failing to grant a continuance after the State added a charge to the bill of information.
On October 11, 2001, the State amended Count 1 of the bill of information to reflect that the incidents had occurred from January 1, 1998 to December 31, 1999, and added Count 2 charging defendant with aggravated crime against nature. Defendant had been charged with this crime by separate bill of information, which was subsequently dismissed. Defense counsel moved for a continuance of the trial date based upon the amendments to the bill. The prosecutor argued that defendant had notice of this information based upon the defense counsel's opportunity to review the videotaped statement of the victim, the information provided within that videotape, and the oral statement of the victim. Defendant's motion for a continuance was denied.
When a bill of information is amended, a defendant may be entitled to a continuance. *1059 La.C.Cr.P. art. 489 provides as follows:
If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy.
The purpose of a continuance is to prevent prejudicial surprise to the defendant. See, State v. Davis, 385 So.2d 193, 197 (La.1980). The defendant has the burden to establish that an amendment to a bill of information has prejudiced his defense so as to necessitate a continuance. See, State v. Issac, 527 So.2d 1045, 1049 (La.App. 5 Cir.1988), writ denied, 532 So.2d 175 (La.1988).
Defendant herein contends that he was prejudiced by having to defend against a charge of attempted aggravated crime against nature four days prior to trial, particularly when the State could not provide a definitive date when the alleged crime occurred. He claims that he did not have adequate time to defend against the new charge.
The State responds that defendant had notice of the charge of attempted aggravated crime against nature because defendant had already been separately charged with this offense in case number 01-2222. Pursuant to La.C.Cr.P. art. 61, the district attorney had the authority to determine how he prosecuted cases, and in this case the district attorney chose to amend the bill pursuant to La.C.Cr.P. art. 493 because the two charges were based upon acts that were connected together and constituted parts of a common scheme.
We find that defendant has failed to show how he was prejudiced by the State's amending of the bill of information and adding of a charge of attempted aggravated crime against nature. The videotape was made available by July 5, 2001, although defense counsel did not view it at that time. The videotape clearly shows a basis for the additional charge, in that T.B. stated that defendant tried to force her to put her mouth on his penis. Although T.B. did not indicate the exact date the incident occurred, she did state that she was 13 years old at the time. Additionally, the bill of information alleged that all incidents occurred between January 1, 1998 and December 31, 1999. Thus, defendant had notice of the evidence the State intended to introduce at trial and adequate time to prepare a defense. Defendant did not meet his burden of showing that he was prejudiced by the trial judge's failure to grant his motion for continuance. Compare State v. Schaefer, 97-465 (La.App. 5 Cir. 11/25/97), 704 So.2d 300, 302-303. Accordingly, we find this allegation of error to be without merit.
In his second allegation of error, defendant argues that the trial court erred in failing to grant his request for a copy of T.B.'s videotaped statement, and that the trial court's failure to provide him the tape violated the Sixth Amendment of the United States Constitution as well as the right to present a defense guaranteed by La. Const., art. I, § 16.
On July 5, 2001, at a hearing on defendant's motion for discovery, defense counsel requested a copy of the tape so that an expert along with defendant could review *1060 it independently. The prosecutor stated that he had no objection to the defense viewing the videotape, but noted that, according to La. R.S. 15:440.5(C), if the court ordered a defendant to be provided a copy of the videotaped statement, only the attorney and the defendant were permitted to view the videotape and that no copies were to be made by any person.
Defense counsel argued that, notwithstanding the code, defendant should be afforded his rights under the Fifth, Sixth, and Fourteenth Amendments. After hearing arguments of counsel, the trial court denied the motion.
La. R.S. 15:440.5 provides in pertinent part:
C. In a criminal prosecution, when the state intends to offer as evidence a copy of a videotaped oral statement of a child made pursuant to the provisions of this Subpart, the defendant may be provided a copy of the videotape if the court determines it necessary to prepare a proper defense. If the court orders the defendant be provided a copy of the videotaped statement, only the attorney and the defendant shall be permitted to view the tape and no copies shall be made by any person. The copy shall be returned to the court immediately upon conclusion of the case. Any violation of this Subsection shall be punished as contempt of court.
We do not believe that the trial court erred in failing to grant defendant's request for the videotape. La. R.S. 15:440.5(C) gives the trial judge discretion to order the State to provide a copy of the videotape; it is not mandatory for him to do so. The record reflects that the State made the videotape available to defendant numerous times, and that defense counsel, in fact, viewed the videotape.
Defendant also argues that the trial court violated his Sixth Amendment right to confront his accusers by failing to provide him with a copy of the videotape.
La. R.S. 15:440.5 provides in pertinent part:
B. The admission into evidence of the videotape of a child as authorized herein shall not preclude the prosecution from calling the child as a witness or taking the child's testimony outside of the courtroom as authorized in R.S. 15:283. Nothing in this Section shall be construed to prohibit the defendant's right of confrontation.
In the instant case, the record reflects that defense counsel viewed the videotape, that the victim, T.B., was called to the stand and testified on direct, and that, on cross-examination, defense counsel inquired into all relevant details of the allegations. Thus, defendant's constitutional right of confrontation was not violated. See, State v. Guidroz, 498 So.2d 108, 110-111 (La.App. 5 Cir.1986)
In his third allegation of error defendant argues that the trial court erred in granting the State's motion in limine, made pursuant to La. C.E. art. 412, to exclude any mention of the victim's past sexual activity. He argues that the trial court erred in not allowing him to introduce evidence of the victim's allegations of sexual abuse against her father, C.N., to show the jury that those allegations were false.
The State responds that defendant did not follow the requirements of La. C.E. art. 412(C) and (D) by making a written motion in camera to the judge with a written statement setting forth the names and addresses of witnesses he wanted to call regarding past sexual behavior of the victim within the time of filing for pre-trial motions. The State argues that the victim's allegations against her father could not be considered false allegations that the defense could have used to impeach the *1061 victim, because the victim's father was still awaiting trial on those allegations and, therefore, the allegations had not been proven to be false.
La. C.E. art. 412 provides in pertinent part:
Art. 412. Victim's past sexual behavior in sexual assault cases
A. Opinion and reputation evidence. When an accused is charged with a crime involving sexually assaultive behavior, reputation or opinion evidence of the past sexual behavior of the victim is not admissible.
B. Other evidence; exceptions. When an accused is charged with a crime involving sexually assaultive behavior, evidence of specific instances of the victim's past sexual behavior is also not admissible except for:
(1) Evidence of past sexual behavior with persons other than the accused, upon the issue of whether or not the accused was the source of semen or injury; provided that such evidence is limited to a period not to exceed seventy-two hours prior to the time of the offense, and further provided that the jury be instructed at the time and in its final charge regarding the limited purpose for which the evidence is admitted; or
(2) Evidence of past sexual behavior with the accused offered by the accused upon the issue of whether or not the victim consented to the sexually assaultive behavior.
C. Motion. (1) Before the person accused of committing a crime that involves sexually assaultive behavior may offer under Paragraph B of this Article evidence of specific instances of the victim's past sexual behavior, the accused shall make a written motion in camera to offer such evidence. The motion shall be accompanied by a written statement of evidence setting forth the names and addresses of persons to be called as witnesses.
(2) The motion and statement of evidence shall be served on the state which shall make a reasonable effort to notify the victim prior to the hearing.
D. Time for a motion. The motion shall be made within the time for filing pre-trial motions specified in Code of Criminal Procedure Article 521, except that the court shall allow the motion to be made at a later date, if the court determines that:
(1) The evidence is of past sexual behavior with the accused, and the accused establishes that the motion was not timely made because of an impossibility arising through no fault of his own; or
(2) The evidence is of past sexual behavior with someone other than the accused, and the accused establishes that the evidence or the issue to which it relates is newly discovered and could not have been obtained earlier through the exercise of due diligence.
(Emphasis as found in the original.)
In State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 586-588, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297, defendant contended that the trial court erred when it granted the State's motion in limine to exclude evidence by the defendant that the victim had previously made false allegations of sexual assault. This Court stated:
When a defendant attempts to use evidence of a victim's false allegations of improper sexual behavior to impeach the victim's credibility, the rape shield statute does not apply. State v. Smith, 98-2045, p. 5 (La.9/8/99), 743 So.2d 199, 203; La. C.E. arts. 412, 607(C). The relevant inquiry in such cases is whether reasonable jurors could find, based on the evidence *1062 presented by defendant, that the victim had made prior false accusations. Smith, 743 So.2d at 203. Assuming that burden has been met, all other standards for the admissibility of evidence apply. Id.; La. C.E. arts. 403, 404, 607, 608 and 613.
In Smith, the Supreme Court set out the test for admissibility of prior false allegations of sexual behavior as follows: "[W]hen considering the admissibility of such evidence, the question for the trial court is not whether it believed the prior statement was false, but whether reasonable jurors could find, based on the evidence presented by defendant, that the victim had made prior false accusations." 743 So.2d at 203.
State v. Wallace, 788 So.2d at 587.
In the instant case, the State argues that defendant was prohibited from offering specific instances of the victim's past sexual behavior because he did not follow the requirements under La. C.E. art. 412(C) and (D) regarding the making of a written motion. In Smith, supra, the Supreme Court concluded that, when a defendant seeks to introduce evidence that the victim made prior false allegations of molestation, the issue is one of credibility, and La. C.E. art. 412 is inapplicable. Smith, 743 So.2d at 203. Since defendant in this case sought to introduce evidence that the victim made prior false allegations of molestation, defendant was not required to make a written motion pursuant to La. C.E. art. 412. Smith, supra.
At the hearing on the motion in limine, defense counsel presented no evidence that the victim's allegations against her father were false, and defendant's mere assertion that the allegations were false does not satisfy the Smith test. The record reflects that reasonable jurors could not find, based on the evidence presented by defendant, that the victim had made prior false accusations against her father. Therefore, the trial court did not err in granting the State's motion in limine to preclude mention of the victim's allegations against her father. Wallace, supra; Smith, supra.
Defendant argues that the trial court erred in granting an exception to the State's motion, in that if a witness inadvertently mentioned the victim's allegations against her father, then the State could elicit all information regarding the issue and not suffer a mistrial. The record reflects that defendant was not prejudiced by this particular ruling, because the trial court also ruled that if this situation occurred, defendant would be allowed to ask any questions of that witness regarding the issue. Additionally, the trial court also ruled that defendant would be allowed to ask the victim what her basis was for filing charges against defendant, and whether she did not want to live with him because of rules he might impose upon her if she resided there. Further, defendant raised this theory of the case during his closing argument. Defendant shows no prejudice by the trial court's rulings regarding these issues.
Defendant next argues that the State should have warned its witnesses, including Detective Cummings, Angela Tyrone, and Dr. Scott Benton, to refrain from mentioning the victim's allegations of sexual abuse by her father. We believe that it would be unreasonable for the witnesses not to mention these allegations since the victim reported to each of these witnesses at the same time that both men abused her, and that the mention of these allegations by these witnesses may have in fact been beneficial to defendant, in that he was then free to question the witness about those allegations.
Defendant also alleges that the State improperly referred to the victim's *1063 allegations against her father in closing argument. Defendant did not make a contemporaneous objection after these statements were made. Because defendant failed to lodge a contemporaneous objection on this ground during trial as required by La.C.Cr.P. art. 841, he is precluded from raising this issue on appeal. State v. Styles, 96-897 (La.App. 5 Cir. 3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609.
In his fourth allegation of error, defendant argues that the trial court erred in failing to grant him a new trial pursuant to La.C.Cr.P. art. 851(3). He states that Mona Lisa Greenup, defendant's niece, testified at the hearing on the new trial motion that T.B. told her that the sexual abuse allegations against defendant were not true. Defendant claims that this was new and material evidence that, notwithstanding the exercise of reasonable diligence by him, was not discovered before or during trial, was available, and that if the evidence would have been introduced at the trial, it would probably have changed the verdict.
Under Louisiana jurisprudence, when the motion for new trial is based on newly discovered evidence, the following four requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) the evidence must be material to the issues at trial; and, (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. State v. East, 99-1379 (La.App. 5 Cir. 7/25/00), 768 So.2d 173, 178, writ denied, 01-3025 (La.10/25/02), 827 So.2d 1167 (citing LSA-C.Cr.P. art. 854 and State v. Brown, 93-1001 (La.App. 5 Cir. 3/29/94), 636 So.2d 964, 966, writ denied, 94-2013 (La.10/2/96), 683 So.2d 243). The trial court's ruling regarding whether these requisites are found is entitled to great weight, and a denial of a motion for new trial will not be disturbed on appeal absent a clear abuse of that discretion. East, 768 So.2d at 178 (citing State v. Knapper, 555 So.2d 1335, 1339 (La.1990) and State v. Brown, supra, at 966).
At the hearing on the motion for new trial, Mona Lisa Greenup, who was called as a witness by the defense, testified that defendant was her uncle, and that T.B. was her first cousin. She testified that, in the spring of 1999, before the trial, she spoke with T.B. while on a lunch break at work, and that T.B. responded "No," when she asked T.B. if defendant had touched her. Ms. Greenup dropped the subject, and T.B. did not say anything else.
Ms. Greenup testified that she did not tell this information to defendant or to defendant's lawyers, and that she did not try to give this information to anyone. Ms. Greenup further testified that she did not go to court and tell anyone because she did not know defendant was going to trial. On cross-examination, Ms. Greenup testified that she had a big family, that her mother was defendant's sister, that she saw the family regularly on holidays, and that everybody lived close to one another. She further testified that she did not know anything about the trial, the police investigation, or T.B.'s hospitalization throughout 1999, 2000, and 2001, even though all of the people involved were within her immediate family and lived within 20 minutes of each other in the Reserve/LaPlace area.
The trial judge denied the motion for new trial, stating that he had presided over the trial and had heard all the evidence, and that he believed that this was not new evidence that could not have been discovered prior to trial, considering the relationships of everyone involved in this matter. The trial judge stated that he did *1064 not believe Ms. Greenup's testimony would have changed the verdict of the jury, that he did not believe that this testimony would in any way indicate that the events testified to by the victim did not occur, and that there was a lot of testimony at the trial regarding why the victim did not want to tell people about the incidents, i.e., that she did not want the authorities to take her brothers away from her mother.
Recantations are highly suspicious and, except in rare circumstances, a motion for new trial should not be granted on the basis of a recantation since that disclaimer is tantamount to admission of perjury so as to discredit the witness at a later trial date. State v. Clayton, 427 So.2d 827, 830 (La.1982). We find that the trial court did not err in denying the motion for new trial.
In his fifth allegation of error, defendant argues that the trial court erred in limiting his redirect examination of Juanita Bolden, defendant's wife, in violation of La. C.E. art. 611(D). He contends that the prosecutor raised a new matter on cross-examination when she (the prosecutor) asked Mrs. Bolden a couple of questions about the conversation they had had prior to trial. When defense counsel asked whether the prosecutor had requested Mrs. Bolden's medical records, the prosecutor objected, arguing that it was beyond the scope of cross-examination, which the trial judge sustained.
La. C.E. art. 611(D) provides in pertinent part:
A witness who has been cross-examined is subject to redirect examination as to matters covered on cross-examination and, in the discretion of the court, as to other matters in the case. When the court has allowed a party to bring out new matter on redirect, the other parties shall be provided an opportunity to recross on such matters.
Redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial court, provided that the opportunity for recross on the new matter brought out on redirect is not denied. State v. Bourgeois, 00-1585 (La. App. 5 Cir. 3/14/01), 785 So.2d 848, 854 (citing State v. Billiot, 94-2419 (La.App. 1 Cir. 4/4/96), 672 So.2d 361, 372, writ denied, 96-1149 (La.10/11/96), 680 So.2d 655).
In the instant case, although the prosecutor established during cross-examination that she and the witness had previously met and discussed the case, the prosecutor did not ask the witness anything regarding medical records or the medical condition of her or her husband or whether she or her husband had ever had a sexually transmitted disease. As such, the trial court did not err in denying defense counsel the opportunity to ask questions pertaining to these topics on redirect examination.
In assignment of error number seven, defendant contends that his sentence was constitutionally excessive. However, at the sentencing hearing, defendant orally objected to the sentence and orally moved for reconsideration of sentence. Neither the transcript nor the commitment reflect that the trial judge ruled on the motion to reconsider sentence.
This Court addressed the same problem in State v. Winfrey, 97-427 (La.App. 5 Cir. 10/38/97), 703 So.2d 63, 80-81, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. In that case, the defendant filed a motion to reconsider his one hundred year enhanced sentence, which, on appeal, defendant claimed was excessive. This Court found that it would be premature to rule on the excessiveness issue while a motion to reconsider *1065 sentence was pending, and remanded the case.
Accordingly, we remand the case for a ruling on the motion and supplementation of the record with the results. If the motion to reconsider is granted and defendant is re-sentenced, he may appeal the new sentence. If the motion is denied or if it has already been ruled on, defendant must move to re-lodge this appeal within sixty days of the date of the ruling on the motion to reconsider sentence or the date of this opinion, whichever is later. State v. Winfrey, supra, at 81. See also, La.C.Cr.P. art. 881.4(C); State v. Smith, 96-285 (La.App. 5 Cir. 10/1/96), 683 So.2d 826, 827.
In assignment of error number eight, defendant argues that the trial court erred in denying benefits when imposing sentence. We find this error to be moot in light of the trial judge's failure to rule on defendant's oral motion to reconsider sentence.
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find none which warrant our attention at this time. We note that the record contains patent error in sentencing, which is rendered moot in light of the trial judge's failure to rule on defendant's motion to reconsider sentence.
CONVICTIONS AFFIRMED; CASE REMANDED.